UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Emmett Buffman,

                Plaintiff,      Case No. 13-cv-14024
                                      Hon. Judith E. Levy
v.                                      Mag. Judge Mona K. Majzoub

United States of America, et al.,

                Defendants.

_____/

**OPINION AND ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING DEFENDANTS' [28] MOTION TO DISMISS PLAINTIFF'S COMPLAINT, DENYING PLAINTIFF'S [29] MOTION TO REPLACE DEFENDANT GIDEL, AND DENYING PLAINTIFF'S [30] MOTION IN OPPOSITION**

This matter is before the Court on Magistrate Judge Mona K. Majzoub's Report and Recommendation, issued on July 10, 2014 (Dkt. 38), in which the Magistrate Judge recommends the Court grant the Motion to Dismiss (Dkt. 28) filed by defendants Terris, Zestos, Pomaloy, Gidel, and Malatinsky, deny plaintiff Emmett Buffman's Motion in Opposition to Defendants' Motion to Dismiss (Dkt. 30), and deny as moot Buffman's Motion to Replace Defendant Stephen Gidel with

1

Bureau of Prisons Director Charles A. Samuels (Dkt. 29). The basis for the recommendation is that Buffman failed to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Plaintiff timely filed objections to the report and defendants replied to those objections. (Dkt. 42, 44.)

For the reasons set forth below, the Court will adopt the Report and Recommendation and enter it as the findings and conclusions of this Court. Defendants' motion to dismiss will accordingly be granted, Buffman's motion in opposition will be denied, and Buffman's motion to replace defendant Gidel will be denied as moot.

I. **Factual and procedural background**

At all times relevant to the allegations in his complaint, Buffman was incarcerated at the Federal Correctional Institution in Milan, Michigan (FCI Milan). The individual defendants are the following Bureau of Prisons (BOP) employees working at FCI Milan at the time relevant to Buffman's allegations: Warden J.A. Terris; Health Services Administrator James Zestos; Medical Licensed Practitioners Restituto Pomaloy and Stephen Gidel; and Clinical Director William Malatinsky.

Buffman's claims against defendants relate to the allegedly improper medical treatment he received in February 2013. First, Buffman alleges that on February 13, 2013, Pomaloy failed to treat two boils on Buffman's body, sending Buffman instead to the optometrist. (Dkt. 1, Compl. 15.) Buffman alleges Pomaloy acted on the basis of personal animus towards him. (*Id.* at 18.) Second, Buffman alleges that on February 20, 2013, Gidel attempted to treat one boil but neglected to treat the other. (*Id.* at 16.) Third, Buffman alleges that on February 21, 2013, Gidel again failed to adequately treat his boils. (*Id.*) Fourth, Buffman alleges he was treated negligently by correctional officers on the way to and upon arrival at the hospital. (*Id.* at 19.) Buffman alleges the purported failure to diagnose and treat his boils resulted in his hospitalization for a staph infection. (*Id.* at 19-20.) Buffman seeks $1,000,000 in damages from all defendants. (*Id.* at 21.)

On March 25, 2013, Buffman filed an administrative claim with the Federal Bureau of Prisons under the Federal Tort Claims Act, seeking $300,000 in damages for personal injury. (Dkt. 1, Ex. 1 to Pl.'s Compl.) That claim was denied on August 22, 2013. (*Id.*) Buffman filed this suit on September 19, 2013, against defendants Terris, Zestos,

3

Pomaloy, Gidel, and Malatinksy under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and against the United States under the Federal Torts Claims Act (FTCA). (Dkt. 1, Compl.) Buffman brings claims for "Negligence, Abuse of Process, Acts Errors, Omissions, Deliberate Indifference, and Condoning or Acquiescing to other federal employees (or each other) from doing the above cited Tort's." (*Id.* at 4.)

Buffman alleges Pomaloy's and Gidel's actions constituted deliberate indifference to a serious medical need. (*Id.* at 6.) Buffman does not allege any personal participation by defendants Terris, Zestos, and Malatinsky in the actions giving rise to his claim for medical negligence.

The individual defendants all moved to dismiss on the grounds that the plaintiff failed to exhaust his administrative remedies by properly pursuing the grievance process at FCI Milan. (Dkt. 28, Defs.' Br. 6-10.) Buffman admits that he did not exhaust the administrative remedies available at FCI Milan. (Dkt. 1, Compl. 4.)

Defendants Terris, Zestos, and Malatinsky raise additional grounds for dismissal of Buffman's claims against them: Buffman does not allege their personal participation in a constitutional violation, and

4

his claims are therefore barred by qualified immunity. (Dkt. 28, Defs.' Br. 10-14.)

The Magistrate Judge recommends granting defendants' motion based on Buffman's undisputed failure to exhaust administrative remedies, as required by the PLRA. She further recommends Buffman's motion in opposition and motion to replace defendant Gidel be denied as moot. Buffman objected to the report and recommendation, contending the Magistrate Judge did not construe the complaint in the light most favorable to Buffman, and again alleging that seeking administrative remedies would result in retaliation against him.

## II. Standard of Review

District courts review *de novo* those portions of a report and recommendation to which a specific objection has been made. 28 U.S.C. § 636(b)(1)(C). "*De novo* review in these circumstances entails at least a review of the evidence that faced the magistrate judge; the Court may not act solely on the basis of a report and recommendation." *Spooner v. Jackson*, 321 F. Supp. 2d 867, 868-69 (E.D. Mich. 2004).

Objections to the report must not be overly general, such as objections that dispute the correctness of the report and recommendation but fail to specify findings believed to be in error. *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006); *see also Howard v. Sec'y of HHS*, 932 F.2d 505, 509 (6th Cir. 1991). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**III. Analysis**

### A.     Exhaustion of Administrative Remedies

The PLRA bars a civil rights action challenging prison conditions until the prisoner exhausts available administrative remedies:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Defendants bear the burden of establishing a plaintiff's failure to exhaust. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012).

The duty to exhaust administrative remedies under the PLRA is mandatory and without exception. *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). The Sixth Circuit has elaborated that "exhaustion is required even if the prisoner subjectively believes the remedy is not available; even when the state cannot grant the particular relief requested; and even where [the prisoners] believe the

procedure to be ineffectual or futile." *Napier v. Laurel Cnty.*, 636 F.3d 218, 222 (6th Cir. 2011) (citations and internal quotation marks omitted).

Prison officials can engage in conduct that effectively renders administrative remedies unavailable to a prisoner. *See Napier*, 636 F.3d at 223-24. However, "[t]he Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Id.* at 223.

Buffman initially maintained it would be "totally pointless" to seek administrative remedies from the individuals and institution who allegedly harmed him. (Dkt. 1, Compl. 4-5.) Buffman later justified his failure to exhaust based on fear of retaliation from prison officials. (Dkt. 30, Pl.'s Mot. in Opposition 4-7, 16.) The Magistrate Judge found that Buffman had "failed to plead any specific facts, incidents, or reasons for his fear of retaliation." (Dkt. 38, Report & Recommendation 5.) Now, Buffman alleges a "very real" threat of retaliation, citing (1) the alleged transfer of another inmate who had assisted others with grievance submissions, and (2) a unit manager named "Miss Moody" forcing Buffman to work during his post-operative rest period, allegedly

because Buffman had filed an administrative grievance against her. (Dkt. 42, Objection 2.)

It is well established in this Circuit that nonspecific allegations of fear and subjective feelings of futility will not excuse a failure to exhaust administrative remedies. *See Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 998 (6th Cir. 2004). Buffman's claim of futility thus cannot excuse his failure to exhaust. As for his fear of retaliation, Buffman's allegation regarding the transfer of another inmate is too vague – for example, the unit manager was purportedly "instrumental" in having the inmate transferred – to support Buffman's objection. And the allegation does not pertain to Buffman himself. The allegation regarding Buffman's being forced to work during recovery ties that action to an administrative complaint against the unit manager herself. (Dkt. 2, Objection 2.) It does not suggest a fear of retaliation for grievances pursued against other officials, such as the defendants here.

Buffman's allegations of fear of retaliation suffer from a greater problem: he filed administrative grievances <u>after</u> the alleged incident of retaliation by Moody. Buffman was released from the hospital and returned to FCI Milan on February 26, 2013. (Dkt. 1, Compl. 19-20.)

9

According to Buffman, health services staff at FCI Milan were to perform follow-up care for 30 days following the surgery. (*Id.* at 21; *see also* Dkt. 42, Objection 2.) During this post-operative period, Buffman alleges Moody forced him to get out of bed and go to work. (Dkt. 42, Objection 2.) But the record shows that Buffman filed an administrative grievance against a unit manager, presumably Moody, on April 23, 2013, a full two months <u>after</u> his return from surgery, and a month after the 30-day post-operative period. (Dkt. 28-2, Ex. A to Defs.' Mot. 9.) Buffman filed another grievance against a unit manager two weeks after that, on May 8, 2013. (*Id.*) Buffman filed additional grievances on May 5, May 27, June 2, and June 11, 2014, all alleging staff misconduct.[1] (Dkt. 44-1, Ex. D to Defs.' Resp. to Pl.'s Objections.) It thus appears that Buffman has <u>not</u> been deterred from filing numerous administrative grievances <u>after</u> the incident he now claims deterred him from exhausting his administrative remedies.

---

[1] In fact, the June 2, 2014 grievance appears to concern Buffman's removal from a GED program by his unit manager. Buffman alleges this grievance was the basis for the retaliatory act – his being forced out of bed while recovering from his surgery – that should excuse his failure to exhaust administrative remedies. Yet the June 2, 2014 grievance was filed well over a year after Buffman's surgery, and thus well after the alleged retaliation took place.

10

Buffman has thus not only failed to show he made "some affirmative efforts to comply with administrative procedures" regarding his present claims, he has shown that the administrative procedures, were, in fact, <u>available</u> to him at the time, based on his continuing to file grievances after the allegedly retaliatory conduct. His allegations of fear of retaliation therefore do not excuse his failure to exhaust administrative remedies, and his claims against the individual defendants must be dismissed without prejudice. *See Boyd*, 380 F.3d at 994 (holding dismissal under § 1997e should be without prejudice).

**B.  Qualified immunity**

The Magistrate Judge declined to decide the issue of qualified immunity, having recommended dismissal of Buffman's claims against the individual defendants for failure to exhaust administrative remedies. The Court nonetheless finds that Buffman's claims against defendants Terris, Zestos, and Malatinsky are barred by qualified immunity.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly

11

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

A plaintiff bears the burden of showing a defendant is not entitled to qualified immunity. *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 568 (6th Cir. 2013). To do so, a plaintiff must (1) allege facts showing violation of a statutory or constitutional right, and (2) show that the right was clearly established at the time of the violation. *Id.* at 568. But the allegations "must establish with particularity that a defendant *himself* has violated some clearly established statutory or constitutional right in order to strip that person of the protection of qualified immunity." *Harris v. City of Cleveland*, 7 F. App'x 452, 457 (6th Cir. 2001). "A plaintiff may not, therefore, rely solely on the doctrine of respondeat superior in order to defeat a supervisor's assertion of qualified immunity." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

Buffman has failed to allege facts showing that Terris, Zestos, or Malatinsky was personally involved in his medical treatment. Buffman makes no allegation against Terris in his complaint. His only allegations regarding Zestos and Malatinsky are that Gidel and Pomaloy were "under the direction of Dr. Malatinsky and Administrator Zesto [*sic*] at all times." (Dkt. 1, Compl. 7.) Moreover, Terris and Zestos have attested in affidavits that they were not personally involved in Buffman's medical treatment. (Dkt. 28-3, Ex. B to Defs.' Mot. ¶¶ 2-3; Dkt. 28-4, Ex. C to Defs.' Mot. ¶ 2.) Terris, Zestos, and Malatinsky are thus entitled to qualified immunity and Buffman's claims against them must be dismissed.

**IV. Conclusion**

Accordingly, the Magistrate Judge's Report and Recommendation (Dkt. 38) is ADOPTED;

The individual defendants' Motion to Dismiss (Dkt. 28) is GRANTED;

Plaintiff's Motion in Opposition (Dkt. 30) is DENIED;

Plaintiff's claims against defendants Terris, Zestos, Pomaloy, Gidel, and Malatinsky are DISMISSED without prejudice; and

Plaintiff's Motion to Replace Defendant Gidel (Dkt. 29) is DENIED as moot.

SO ORDERED.

Dated: January 6, 2015        s/Judith E. Levy
Ann Arbor, Michigan        JUDITH E. LEVY
                                    United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 6, 2015.

                                        s/Felicia M. Moses
                                        FELICIA M. MOSES
                                        Case Manager