# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**EMMETT BUFFMAN,**

      **Plaintiff,**        CIVIL ACTION NO. 13-cv-14024

      v.        DISTRICT JUDGE JUDITH E. LEVY

**UNITED STATES OF**        MAGISTRATE JUDGE MONA K. MAJZOUB
**AMERICA, et al.,**

      **Defendants.**
_____/

### OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT [39], GRANTING PLAINTIFF'S MOTION TO APPOINT COUNSEL [40], DENYING PLAINTIFF'S MOTION FOR DISCOVERY [41], DENYING PLAINTIFF'S MOTION FOR EXTENSION OF TIME [49], AND STAYING THIS MATTER FOR NINETY DAYS

On September 19, 2013, Plaintiff Emmett Buffman, a prisoner at the Federal Correctional Institution in Milan, Michigan (FCI Milan), filed this claim against Defendants J.A. Terris, James Zestos, Restituto Pomaloy, Stephen Gidel, and William Malatinsky under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) and the United States of America under the Federal Tort Claims Act (FTCA) alleging "Negligence, Abuse of Process, Acts Errors, Omissions, Deliberate Indifference, and Condoning or Acquiescing to other federal employees (or each other) from doing the above cited Tort's." *(sic)*. (*See* docket no. 1.) The Court dismissed Plaintiff's claims against the individual Defendants on January 6, 2015 for Plaintiff's failure to exhaust his administrative remedies. (Docket no. 51.) What remains are Plaintiff's claims against Defendant United States of America under the FTCA.

Plaintiff's claims arise from the medical treatment he received for two boils on his body

located underneath his left arm and in the groin area. (*See* docket no. 1.) Plaintiff alleges that on February 13, 2013, he went to the Health Services Department ("HSD") at FCI Milan and complained of a boil in his left underarm area and one in his groin area, which were emitting pus and blood. (*Id*. at 15.) He claims that Defendant Pomaloy examined him and noticed a small whitehead on Plaintiff's right eye. (*Id*.) Plaintiff explained to Defendant Pomaloy that the whitehead was a result of his underlying infection. (*Id*.) Plaintiff asserts that instead of treating Plaintiff's "infectious issues," Defendant Pomaloy sent Plaintiff to the visiting optometrist, who gave Plaintiff antibiotic eye drops. (*Id*.) Plaintiff further asserts that he was then sent back to Defendant Pomaloy, who sent Plaintiff back to his housing unit regardless of his complaint about the two boils. (*Id*.) Plaintiff states that his boils persisted, oozed pus constantly, and caused Plaintiff to suffer anxiety and pain on a level of eight out of ten on a regular basis. (*Id*.)

Plaintiff alleges that he returned to the HSD on February 20, 2013 to complain of "the same exact persisting issues." (*Id*. at 16.) Plaintiff avers that pus and blood were continuously draining from the boil in his groin area, and the boil under his arm was swollen, increasing in size, and so painful that Plaintiff would black out occasionally. (*Id*.) Plaintiff claims that Defendant Gidel attempted to lance the boil in the groin area but was unable to remove the toxins because the core was so hard that nothing came out. (*Id*.) With regard to the boil under Plaintiff's arm, Plaintiff asserts that Defendant Gidel chose to leave it alone and sent Plaintiff back to his unit with no further action, no second opinion, and no offer to get Plaintiff professional help. (*Id*.) Plaintiff alleges that he saw Defendant Gidel again the next day, but he was still unable to remove the core of the boil in the groin area and continued to ignore the boil under Plaintiff's arm. (*Id*.) Plaintiff claims that his pain was intense, extreme, and elevated to a level nine on a scale of ten. (*Id*.)

Plaintiff alleges that on February 22, 2013, he was helpless, unresponsive, and extremely lethargic. (*Id.* at 17.) He claims that a case manager called health services immediately on behalf of Plaintiff due to the pale color of his skin, his pattern of speech, and his failure to respond to certain questions. (*Id.*) He further claims that he slowly made his way to the HSD on his own because he did not have the presence of mind to ask for assistance due to the "toxins coursing through his veins and brain." (*Id.*) Upon Plaintiff's arrival at the HSD, Plaintiff avers that Dr. Gidel took one look at the boil in his groin area, made a series of phone calls, and ordered that Plaintiff be rushed to the hospital by prison staff rather than waiting for an ambulance. (*Id.* at 18.) Plaintiff claims that he underwent emergency surgery at the hospital that same day, which resulted in the extraction of two infectious cores from his boils that were the size of tennis balls. (*Id.* at 20.) Plaintiff says that he remained in the hospital for five days due to the staph infection, where he was administered pain medication and antibiotics. (*Id.* at 20, 21.) Plaintiff returned to FCI Milan on February 26, 2013. (*Id.*)

Plaintiff claims that the progression of his infection was furthered by the "negligence, acts, errors, omissions, deliberate indifference, abuse of process, and deliberate indifference of Pomaloy, Gidal, the culture of HSD Staff at FCI Milan, as well as the oversight in the institution, and oversight by the United States." (*Id.* at 21.) Specifically, Plaintiff alleges that Defendant Pomaloy mischaracterized and "situationally re-framed" Plaintiff's medical issues by sending him to the optometrist, and by doing so, he failed to diagnose and treat Plaintiff's staph infection. (*Id.* at 18.) Plaintiff also alleges that Defendant Pomaloy and Gidel's failure to diagnose and treat his serious medical condition exacerbated Plaintiff's harm and led to critical emergency surgery. (*Id.* at 19-20.) Plaintiff further alleges that his medical issues could have easily been resolved with antibiotics,

-3-

which the HSD staff failed to prescribe. (*Id*. at 20.) Plaintiff seeks $1,000,000 in damages. (*Id*. at 22.)

This matter comes before the Court on four motions: (1) Plaintiff's Motion for Leave to Amend Complaint (docket no. 39); (2) Plaintiff's Motion to Submit This Case to Pro Bono Committee for Purposes of Potentially Appointing Counsel (docket no. 40); (3) Plaintiff's Motion for Discovery Conference, Depositions, and Production of Documents (docket no. 41); and (4) Plaintiff's Motion for Extension of Time (docket no. 49).[1] Defendant responded to Plaintiff's Motions. (Docket nos. 45 and 50.) This action has been referred to the undersigned for all pretrial purposes. (Docket no. 20.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

**I.     Motion for Leave to Amend Complaint [39]**

Plaintiff filed a "Motion for Leave to Amend Complaint due to Additional Wantonly Inflicted Injuries by Miss Moody, Resulting in Vindictive Damages which are Continuing and Ongoing Even to This Day" on July 16, 2014. (Docket no. 39.) In his Motion, Plaintiff asserts that he filed his Complaint without mentioning the actions of Unit Manager Moody, who "has been administering aggravating factors, resulting in aggravating issues which are increasing the damages through both **VINDICTIVE** and **EXTRAORDINARY DAMAGES** due to the 'Wantonly Inflicted Injuries' by Miss Moody." (*Id*. ¶¶ 1-2 (emphasis in original).) Plaintiff failed to file a proposed

---

[1]Also pending before the Court is Defendant United States of America's Motion to Dismiss, or in the Alternative, for Summary Judgment (docket no. 43), for which the undersigned has issued a Report and Recommendation contemporaneously with this Opinion and Order.

amended complaint with his Motion as required by Eastern District of Michigan Local Rule 15.1. Additionally, Plaintiff's Motion does not include a supporting brief as required by E.D. Mich. L.R. 7.1(d). Therefore, the Court will deny Plaintiff's Motion for Leave to Amend Complaint without prejudice.

## II. Motion to Appoint Counsel [40]

Plaintiff also filed a "Motion Requesting this Honorable Court to Submit This Case to 'Pro Bono Committee' for Purposes of Potentially Appointing Counsel in the Case at Bar" on July 16, 2014. (Docket no. 40.) Appointment of counsel for prisoners proceeding *in forma pauperis* is governed by 28 U.S.C. § 1915, which states that "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The Sixth Circuit has stated:

> Appointment of counsel in a civil case is not a constitutional right. It is a privilege that is justified only by exceptional circumstances. In determining whether "exceptional circumstances" exist, courts have examined the type of case and the abilities of the plaintiff to represent himself. This generally involves a determination of the complexity of the factual and legal issues involved.

*Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993) (internal quotations and citations omitted). *See also Glover v. Johnson*, 75 F.3d 264, 268 (6th Cir. 1996) (quoting Charles R. Richey, Prisoner Litigation in the United States Courts 75 (1995) ("'Prisoners have no statutory right to counsel in civil rights cases. Instead, the appointment of counsel is within the court's discretion.'").

As Defendant points out, Plaintiff, in his Motion, does not address the complexity of the factual and legal issues involved in his claims. However, Plaintiff is proceeding *pro se* on what is, essentially, a medical malpractice claim under the Federal Tort Claims Act. This type of claim inherently involves the litigation of complex legal issues. Thus, the Court finds that Plaintiff would benefit from the assistance of counsel and will refer this case to the Pro Bono Committee. The Court

will also stay this matter for a period of ninety days to allow time for the Committee to determine whether pro bono counsel can be found to represent Plaintiff's interests. If the Committee is unable to secure counsel for Plaintiff after ninety days, Plaintiff will be required to proceed *pro se* in this matter.

### III.    Motion for Discovery [41]

On July 16, 2014, Plaintiff also filed a Motion for Discovery Conference, Depositions, and Production of Documents. (Docket no. 41.) In his Motion, Plaintiff asserts that he is in need of a discovery conference to set a proper schedule and assure that the parties are on the same timeline with respect to discovery. (*Id.* ¶ 1.) Plaintiff also requests that the Court issue orders for Plaintiff's "acquisition of" and "initiation of" depositions of employees from the Bureau of Prisons and St. Joseph Mercy Hospital. (*Id.* ¶¶ 3-4.) Plaintiff does not offer any information regarding his Motion for Production of Documents other than that he has "submitted a letter to the Defendant care of Prisoner Correspondent located at 200 East Liberty Street, Ste. 300, Ann Arbor, MI 48104." (*Id.* at 3.) It is unclear whether Plaintiff has personally noticed any depositions or served a request for production of documents on Defendant. Seemingly, Plaintiff is asking the Court to do so for him.

As the Court explained in its July 10, 2014 Order denying Plaintiff's initial Motion for Discovery, such a request is improper. While Plaintiff may file a Motion to Compel responses to discovery under Federal Rule of Civil Procedure 37 if Defendant fails to properly respond, he must first serve Defendant with such discovery requests as provided in Fed. R. Civ. P. 26, 33, and 34. That is, Plaintiff's discovery requests must first be directed to Defendant, not filed with the Court. Plaintiff is also required to notice and conduct depositions as provided under Rules 30 and 31. Therefore, the Court will deny Plaintiff's Motion for Discovery Conference, Depositions, and

Production of Documents. Presumably, if the Pro Bono Committee is able to secure counsel for Plaintiff, Plaintiff's counsel will conduct discovery on his behalf. If, after ninety days, the Committee is unable to obtain counsel for Plaintiff, Plaintiff will be required to conduct his own discovery in accordance with the Federal Rules of Civil Procedure.

### IV. Motion for Extension of Time [49]

On September 10, 2014, Plaintiff filed a Motion for Extension of Time of ninety days. (Docket no. 49.) In his Motion, Plaintiff asserts that he has no prior legal experience and that he is unfamiliar with Michigan medical malpractice law. (*Id*. ¶ 1.) He further asserts that an extension would afford him time to obtain counsel and adequately respond to Defendant's Motion for Summary Judgment. (*Id*. ¶ 2.) As discussed above, the Court, on its own initiative, has decided to stay this matter for a period of ninety days while the Pro Bono Committee attempts to secure counsel on behalf of Plaintiff. Accordingly, the Court will deny Plaintiff's Motion for Extension of Time as moot.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to Amend Complaint [39], Motion for Discovery [41], and Motion for Extension of Time [49] are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Appoint Counsel [40] is **GRANTED**. The Court will submit this case to the Pro Bono Committee in an effort to secure counsel for Plaintiff.

**IT IS FURTHER ORDERED** that this matter is stayed for a period of ninety days to allow time for the Pro Bono Committee to locate counsel on behalf of Plaintiff. If, however, after ninety days, the Committee is unable to find pro bono counsel willing to represent Plaintiff's interests, Plaintiff will be required to proceed *pro se* in this matter.

## NOTICE TO THE PARTIES

Pursuant to Federal Rule of Civil Procedure 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).


Dated: February 12, 2015       s/ Mona K. Majzoub
                                          MONA K. MAJZOUB
                                          UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Order was served upon Emmett Buffman and Counsel of Record on this date.

Dated: February 12,, 2015       s/ Lisa C. Bartlett
                                          Case Manager