## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**EMMETT BUFFMAN,**

           **Plaintiff,**              **CIVIL ACTION NO. 13-cv-14024**

        **v.**                       **DISTRICT JUDGE JUDITH E. LEVY**

**UNITED STATES OF**           **MAGISTRATE JUDGE MONA K. MAJZOUB**
**AMERICA, et al.,**

           **Defendants.**
_____/

### REPORT AND RECOMMENDATION

On September 19, 2013, Plaintiff Emmett Buffman, a prisoner at the Federal Correctional Institution in Milan, Michigan (FCI Milan), filed this claim against Defendants J.A. Terris, James Zestos, Restituto Pomaloy, Stephen Gidel, and William Malatinsky under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) and the United States of America under the Federal Tort Claims Act (FTCA) alleging "Negligence, Abuse of Process, Acts Errors, Omissions, Deliberate Indifference, and Condoning or Acquiescing to other federal employees (or each other) from doing the above cited Tort's." (*See* docket no. 1.)  This matter comes before the Court on Defendant United States of America's Motion to Dismiss or, in the Alternative, for Summary Judgment.[1] (Docket no. 43.)  Plaintiff responded to Defendant's Motion (docket no. 46), and Defendant replied to Plaintiff's Response (docket no. 48).  This action has been referred to the undersigned for all

---

[1]Also pending before the Court are Plaintiff's Motion for Leave to Amend Complaint (docket no. 39), Motion to Appoint Counsel (docket no. 40), Motion for Discovery (docket no. 41), and Motion for Extension of Time (docket no. 49).  The undersigned will address these motions in a separate Opinion and Order issued contemporaneously with this Report and Recommendation.

pretrial purposes.  (Docket no. 20.)  The Court dispenses with oral argument on the motions pursuant

to Eastern District of Michigan Local Rule 7.1(f) and issues this Report and Recommendation

pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.      RECOMMENDATION

For the reasons that follow, the undersigned recommends that Defendant's Motion to

Dismiss or, in the Alternative, for Summary Judgment (docket no. 43) be **DENIED** as premature.

## II.     REPORT

### A.      Background

Plaintiff's claims arise from the medical treatment he received for two boils on his body

located underneath his left arm and in the groin area.  (*See* docket no. 1.)  Plaintiff alleges that on

February 13, 2013, he went to the Health Services Department ("HSD") at FCI Milan and

complained of a boil in his left underarm area and one in his groin area, which were emitting pus

and blood.  (*Id*. at 15.)  He claims that Defendant Pomaloy examined him and noticed a small

whitehead on Plaintiff's right eye.  (*Id*.)  Plaintiff explained to Defendant Pomaloy that the

whitehead was a result of his underlying infection.  (*Id*.)  Plaintiff asserts that instead of treating

Plaintiff's "infectous issues," Defendant Pomaloy sent Plaintiff to the visiting optometrist, who gave

Plaintiff antibiotic eye drops.  (*Id*.)  Plaintiff further asserts that he was then sent back to Defendant

Pomaloy, who sent Plaintiff back to his housing unit regardless of his complaint about the two boils.

(*Id*.)  Plaintiff states that his boils persisted, oozed pus constantly, and caused Plaintiff to suffer

anxiety and pain on a level of eight out of ten on a regular basis.  (*Id*.)

Plaintiff alleges that he returned to the HSD on February 20, 2013 to complain of "the same

exact persisting issues."  (*Id*. at 16.)  Plaintiff avers that pus and blood were continuously draining

from the boil in his groin area, and the boil under his arm was swollen, increasing in size, and so painful that Plaintiff would black out occasionally. (*Id.*) Plaintiff claims that Defendant Gidel attempted to lance the boil in the groin area but was unable to remove the toxins because the core was so hard that nothing came out. (*Id.*) With regard to the boil under Plaintiff's arm, Plaintiff asserts that Defendant Gidel chose to leave it alone and sent Plaintiff back to his unit with no further action, no second opinion, and no offer to get Plaintiff professional help. (*Id.*) Plaintiff alleges that he saw Defendant Gidel again the next day, but he was still unable to remove the core of the boil in the groin area and continued to ignore the boil under Plaintiff's arm. (*Id.*) Plaintiff claims that his pain was intense, extreme, and elevated to a level nine on a scale of ten. (*Id.*)

Plaintiff alleges that on February 22, 2013, he was helpless, unresponsive, and extremely lethargic. (*Id.* at 17.) He claims that a case manager called health services immediately on behalf of Plaintiff due to the pale color of his skin, his pattern of speech, and his failure to respond to certain questions. (*Id.*) He further claims that he slowly made his way to the HSD on his own because he did not have the presence of mind to ask for assistance due to the "toxins coursing through his veins and brain." (*Id.*) Upon Plaintiff's arrival at the HSD, Plaintiff avers that Dr. Gidel took one look at the boil in his groin area, made a series of phone calls, and ordered that Plaintiff be rushed to the hospital by prison staff rather than waiting for an ambulance. (*Id.* at 18.) Plaintiff claims that he underwent emergency surgery at the hospital that same day, which resulted in the extraction of two infectious cores from his boils that were the size of tennis balls. (*Id.* at 20.) Plaintiff says that he remained in the hospital for five days due to the staph infection, where he was administered pain medication and antibiotics. (*Id.* at 20, 21.) Plaintiff returned to FCI Milan on February 26, 2013. (*Id.*)

Plaintiff claims that the progression of his infection was furthered by the "negligence, acts, errors, omissions, deliberate indifference, abuse of process, and deliberate indifference of Pomaloy, Gidal, the culture of HSD Staff at FCI Milan, as well as the oversight in the institution, and oversight by the United States." (*Id*. at 21.)  Specifically, Plaintiff alleges that Defendant Pomaloy mischaracterized and "situationally reframed" Plaintiff's medical issues by sending him to the optometrist, and by doing so, he failed to diagnose and treat Plaintiff's staph infection.  (*Id*. at 18.) Plaintiff also alleges that Defendant Pomaloy and Gidel's failure to diagnose and treat his serious medical condition exacerbated Plaintiff's harm and led to critical emergency surgery. (*Id*. at 19-20.) Plaintiff further alleges that his medical issues could have easily been resolved with antibiotics, which the HSD staff failed to prescribe.  (*Id*. at 20.)  Plaintiff seeks $1,000,000 in damages.  (*Id*. at 22.)

On July 10, 2014, the undersigned issued a Report and Recommendation that Plaintiff's claims against the individual Defendants be dismissed for Plaintiff's failure to exhaust his administrative remedies.  (Docket no. 38.)  The Court adopted the Report and Recommendation in a January 6, 2015 Order.  (Docket no. 51.)  Thus, all that remains are Plaintiff's claims against Defendant United States of America under the FTCA.  On July 23, 2014, Defendant United States of America filed a Motion to Dismiss or, in the Alternative, for Summary Judgment.  (Docket no. 43.)  Plaintiff responded to Defendant's Motion on August 6, 2014 (docket no. 46), and Defendant replied to Plaintiff's Response on September 4, 2014 (docket no. 48).  This Motion is currently pending before the Court.

**B.**     **Governing Law**

   *1.*     *Motion to Dismiss*

-4-

When deciding a motion under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The plaintiff must provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed.R.Civ.P. 8(a)(2)). But this statement "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action;" instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 2.    *Motion for Summary Judgment*

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

support the fact.

Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial.  *Covington*, 205 F.3d at 915.  A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

## C.     Analysis

Defendant asserts that Plaintiff's FTCA claim is subject to dismissal because Plaintiff's Complaint fails to satisfy the elements of a medical malpractice claim.  (Docket no. 43 at 14-15.) Alternatively, Defendant asserts that summary judgment is appropriate because there is no disputed issue of material fact regarding Plaintiff's medical malpractice claim.  (*Id*. at 15.)  To support its argument in favor of summary judgment, Defendant submitted expert evidence from Dr. Grant Greenberg, M.D., who reviewed Plaintiff's medical records and Complaint, described the standard of care applicable to Plaintiff's case, and opined that Defendant "complied with the applicable standards of care in all respects regarding the care and treatment of [Plaintiff's] boils at FCI Milan" and that "said care and treatment did not cause or contribute to [Plaintiff's] conditions."  (*Id*. at 15-

17 (quoting docket no. 43-15 ¶¶ 16-17).)

The United States of America has waived its sovereign immunity under the Federal Tort Claims Act for claims against it for monetary damages arising from "'personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant.'" *Matthews v. Robinson*, 52 F. App'x 808, 809 (6th Cir. 2002) (quoting 28 U.S.C. § 1346(b)). "Liability under the FTCA is determined by reference to the law of the state where the alleged medical malpractice or negligence occurred." *Shedden v. U.S.*, 101 F. App'x 114, 115-16 (6th Cir. 2004) (citations omitted).

To establish a claim of medical malpractice in Michigan, a plaintiff must set forth "(1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care." *Craig ex rel. Craig v. Oakwood Hosp.*, 684 N.W.2d 296, 308 (Mich. 2004) (footnote omitted); *see also* MCL § 600.2912a. Expert testimony is generally required to establish these elements. *Moore v. U.S.*, No. 2:07-cv-14640, 2011 WL 3568763, at *9 (E.D. Mich. Aug. 12, 2011) (citing *Woodard v. Custer*, 702 N.W.2d 522, 525 (Mich. 2005)).

Defendant asserts that its Motion to Dismiss Plaintiff's FTCA claim should be granted because Plaintiff's allegations in his Complaint do not satisfy the elements of a Michigan malpractice claim. However, this matter is more appropriately resolved through a motion for summary judgment. *See Shedden*, 101 F. App'x at 116. Accordingly, after viewing Defendant's Motion as such, and after a thorough review of the record, the undersigned will recommend that

Defendant's Motion for Summary Judgment be denied as premature.

Generally, "summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Vance v. U.S.*, 90 F.3d 1145, 1148 (6th Cir. 1996) (citing *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231-32 (6th Cir. 1994)). The record indicates that Plaintiff has not yet conducted discovery in this matter, but he has not been dilatory in his efforts to conduct discovery. Although procedurally improper, Plaintiff filed two Motions for Discovery in this case, one of which was outstanding before Defendant filed the instant motion. Also, Plaintiff sets forth a lengthy, albeit disorganized, request for discovery in his Response to Defendant's Motion. (Docket no. 46 at 17-22, 23.) Moreover, in an Opinion and Order issued contemporaneously with this Report and Recommendation, the undersigned found that, due to the complex legal issues involved in this matter, Plaintiff would benefit from the assistance of counsel; thus, the undersigned granted Plaintiff's Motion to Appoint Counsel and stayed this matter for ninety days to allow the Pro Bono Committee time to secure counsel for Plaintiff. Presumably, if the Pro Bono Committee is able to obtain counsel for Plaintiff, Plaintiff's counsel will conduct discovery on his behalf. Under these circumstances, it would be premature to grant summary judgment in favor of Defendant; Defendant's Motion should be denied.

### D.    Conclusion

For the above-stated reasons, the   undersigned   recommends   that the Court **DENY** Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (docket no. 43) as premature.

## III.    NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation,

but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: February 12, 2015          s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Emmett Buffman and Counsel of Record on this date.

Dated: February 12, 2015          s/ Lisa C. Bartlett
                                   Case Manager