UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMMETT BUFFMAN,

        Plaintiff,                CIVIL ACTION NO. 13-cv-14024

        v.                            DISTRICT JUDGE JUDITH E. LEVY

UNITED STATES OF            MAGISTRATE JUDGE MONA K. MAJZOUB
AMERICA, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

On September 19, 2013, Plaintiff Emmett Buffman initiated this action *pro se* against Defendants J.A. Terris, James Zestos, Restituto Pomaloy, Stephen Gidel, and William Malatinsky under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) and the United States of America under the Federal Tort Claims Act (FTCA) alleging "Negligence, Abuse of Process, Acts Errors, Omissions, Deliberate Indifference, and Condoning or Acquiescing to other federal employees (or each other) from doing the above cited Tort's [sic]." (Docket no. 1.) The court dismissed Plaintiff's claims against the individual Defendants on January 6, 2015 for Plaintiff's failure to exhaust his administrative remedies. (Docket no. 51.) What remains are Plaintiff's claims against Defendant United States of America under the FTCA. On June 22, 2015, the Court assigned pro bono counsel to represent Plaintiff on his remaining claims. (Docket no. 64.)

This matter comes before the Court on Defendant United States of America's Motion for Summary Judgment. (Docket no. 78.) Plaintiff filed a "Response to Defendant's Motion for

Summary Judgment and Request for Leave to File a Motion to Amend Pleadings Pursuant to Fed. R. Civ. P. 15." (Docket no. 79.) Defendant filed a reply brief in support of its Motion for Summary Judgment. (Docket no. 80.) This action has been referred to the undersigned for all pretrial purposes. (Docket no. 36.) The Court dispenses with oral argument on the Motion pursuant to Eastern District of Michigan Local Rule 7.1(f) and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I. RECOMMENDATION

For the reasons that follow, the undersigned recommends that Defendant's Motion for Summary Judgment (docket no. 78) be **GRANTED** and that this matter be dismissed in its entirety.

## II. REPORT

### A. Background

#### 1. *Plaintiff's Complaint*

Plaintiff is currently incarcerated at the Federal Correctional Institution in Lisbon, Ohio (FCI Elkton); however, the events giving rise to Plaintiff's Complaint allegedly occurred while he was incarcerated at the Federal Correctional Institution in Milan, Michigan (FCI Milan). (Docket nos. 1, 63.) Plaintiff's claims originate from the medical treatment he received for two boils on his body located underneath his left arm and in the groin area. (*See* docket no. 1.) Plaintiff alleges that on February 13, 2013, he went to the Health Services Department ("HSD") at FCI Milan and complained of a boil in his left underarm area and one in his groin area, which were emitting pus and blood. (*Id*. at 15.) He claims that Defendant Pomaloy examined him and noticed a small whitehead on Plaintiff's right eye. (*Id*.) Plaintiff explained to Defendant Pomaloy that the whitehead was a result of his underlying infection. (*Id*.) Plaintiff asserts that

2

instead of treating Plaintiff's "infectous issues," Defendant Pomaloy sent Plaintiff to the visiting optometrist, who gave Plaintiff antibiotic eye drops. (*Id*.) Plaintiff further asserts that he was then sent back to Defendant Pomaloy, who sent Plaintiff back to his housing unit regardless of his complaint about the two boils. (*Id*.) Plaintiff states that his boils persisted, oozed pus constantly, and caused Plaintiff to suffer anxiety and pain on a level of eight out of ten on a regular basis. (*Id*.)

Plaintiff alleges that he returned to the HSD on February 20, 2013 to complain of "the same exact persisting issues." (*Id*. at 16.) Plaintiff avers that pus and blood were continuously draining from the boil in his groin area, and the boil under his arm was swollen, increasing in size, and so painful that Plaintiff would black out occasionally. (*Id*.) Plaintiff claims that Defendant Gidel attempted to lance the boil in the groin area but was unable to remove the toxins because the core was so hard that nothing came out. (*Id*.) With regard to the boil under Plaintiff's arm, Plaintiff asserts that Defendant Gidel chose to leave it alone and sent Plaintiff back to his unit with no further action, no second opinion, and no offer to get Plaintiff professional help. (*Id*.) Plaintiff alleges that he saw Defendant Gidel again the next day, but he was still unable to remove the core of the boil in the groin area and continued to ignore the boil under Plaintiff's arm. (*Id*.) Plaintiff claims that his pain was intense, extreme, and elevated to a level nine on a scale of ten. (*Id*.)

Plaintiff alleges that on February 22, 2013, he was helpless, unresponsive, and extremely lethargic. (*Id*. at 17.) He claims that a case manager called health services immediately on behalf of Plaintiff due to the pale color of his skin, his pattern of speech, and his failure to respond to certain questions. (*Id*.) He further claims that he slowly made his way to the HSD on his own because he did not have the presence of mind to ask for assistance due to the "toxins

3

coursing through his veins and brain." (*Id*.) Upon Plaintiff's arrival at the HSD, Plaintiff avers that Dr. Gidel took one look at the boil in his groin area, made a series of phone calls, and ordered that Plaintiff be rushed to the hospital by prison staff rather than waiting for an ambulance. (*Id*. at 18.) Plaintiff claims that he underwent emergency surgery at the hospital that same day, which resulted in the extraction of two infectious cores from his boils that were the size of tennis balls. (*Id*. at 20.) Plaintiff says that he remained in the hospital for five days due to the staph infection, where he was administered pain medication and antibiotics. (*Id*. at 20, 21.) Plaintiff returned to FCI Milan on February 26, 2013. (*Id*.)

Plaintiff claims that the progression of his infection was furthered by the "negligence, acts, errors, omissions, deliberate indifference, abuse of process, and deliberate indifference of Pomaloy, Gidal, the culture of HSD Staff at FCI Milan, as well as the oversight in the institution, and oversight by the United States." (*Id*. at 21.) Specifically, Plaintiff alleges that Defendant Pomaloy mischaracterized and "situationally reframed" Plaintiff's medical issues by sending him to the optometrist, and by doing so, he failed to diagnose and treat Plaintiff's staph infection. (*Id*. at 18.) Plaintiff also alleges that Defendant Pomaloy and Gidel's failure to diagnose and treat his serious medical condition exacerbated Plaintiff's harm and led to critical emergency surgery. (*Id*. at 19-20.) Plaintiff further alleges that his medical issues could have easily been resolved with antibiotics, which the HSD staff failed to prescribe. (*Id*. at 20.) Plaintiff seeks $1,000,000 in damages. (*Id*. at 22.)

2. *Procedural History*

On July 10, 2014, the Court issued a Report and Recommendation that Plaintiff's claims against the individual Defendants be dismissed for Plaintiff's failure to exhaust his administrative remedies. (Docket no. 38.) District Judge Judith E. Levy adopted the Report and

4

Recommendation in a January 6, 2015 Order.  (Docket no. 51.)  Thus, all that remains are Plaintiff's claims against Defendant United States of America under the FTCA.  On July 23, 2014, Defendant United States of America filed a Motion to Dismiss or, in the Alternative, for Summary Judgment.  (Docket no. 43.)  On February 12, 2015, the Court construed Defendant's July 23, 2014 Motion as a motion for summary judgment and issued a Report and Recommendation that the Motion be denied as premature because Plaintiff had not been afforded a sufficient opportunity for discovery.  (Docket no. 57.)  Judge Levy adopted that Report and Recommendation on March 27, 2015.  (Docket no. 60.)

Also on February 12, 2015, the Court granted Plaintiff's Motion to Appoint Counsel and stayed this matter for ninety days to secure pro bono counsel for Plaintiff.  (Docket no. 56.)  On June 22, 2015, the Court assigned pro bono counsel to represent Plaintiff on his remaining claims.  (Docket no. 64.)  The Court then issued a Scheduling Order on August 14, 2015, which set the witness list deadline for February 1, 2016, the discovery deadline for March 1, 2016, and the dispositive motion deadline for April 4, 2016.  (Docket no. 66.)  On February 22, 2016, however, the Court granted the parties' Joint Motion to Extend and modified the Scheduling Order by setting the Rule 26 expert disclosures deadline for May 1, 2016, the discovery deadline for May 20, 2016, and the dispositive motion deadline for July 22, 2016.  (Docket no. 75.)  According to Defendant, the parties have conducted extensive discovery in this matter, including several sets of interrogatories and requests for production, as well as five depositions.  (Docket no. 78 at 10-11.)

After receiving leave of court to file a second dispositive motion (docket no. 77), Defendant filed the instant Motion for Summary Judgment on May 20, 2016 (docket no. 78). Plaintiff filed a "Response to Defendant's Motion for Summary Judgment and Request for Leave

5

to File a Motion to Amend Pleadings Pursuant to Fed. R. Civ. P. 15." (Docket no. 79.) Defendant filed a reply brief in support of its Motion for Summary Judgment. (Docket no. 80.) Defendant's Motion is currently pending before the Court.

### B. Governing Law

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket no. 78.) Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

### C. Analysis

The United States of America has waived its sovereign immunity under the Federal Tort Claims Act for claims against it for monetary damages arising from "'personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant.'" *Matthews v. Robinson*, 52 F. App'x 808, 809 (6th Cir. 2002) (quoting 28 U.S.C. § 1346(b)). "Liability under the FTCA is determined by reference to the law of the state where the alleged medical malpractice or negligence occurred." *Shedden v. U.S.*, 101 F. App'x 114, 115-16 (6th Cir. 2004) (citations omitted).

To establish a claim of medical malpractice in Michigan, a plaintiff must set forth "(1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care." *Craig ex rel. Craig v. Oakwood Hosp.*, 684 N.W.2d 296, 308 (Mich. 2004) (footnote omitted); *see also* MCL § 600.2912a. "As a general rule, Michigan courts require expert testimony in medical-malpractice cases, particularly for establishing the applicable standard of care and causation." *Kava v. Peters*, 450 F. App'x 470, 475 (6th Cir.

2011) (citing *Pennington v. Longabaugh,* 719 N.W.2d 616, 618 (Mich. Ct. App. 2006) and *Thomas v. McPherson Cmty. Health Ctr.,* 400 N.W.2d 629, 631 (Mich. Ct. App. 1986)).

In its Motion, Defendant explains that Plaintiff identified two physicians as expert witnesses in his February 1, 2016 witness list but later decided not to retain either physician and withdrew them as experts. (Docket no. 78 at 16-17; docket no. 70; docket no. 78-4.) Defendant also points out that Plaintiff failed to identify new experts by the May 1, 2016 deadline. (Docket no. 78 at 17.) Defendant asserts that it is therefore entitled to judgment as a matter of law on Plaintiff's FTCA claim because Plaintiff cannot meet his burden of establishing a *prima facie* case of medical malpractice without expert testimony. (*Id*. at 18.) Plaintiff responds that his claim sounds in ordinary negligence rather than medical malpractice, and he seeks leave to file a motion to amend the Complaint accordingly.[1] (Docket no. 79.)

The Michigan Supreme Court has implemented a two-part test that a court must use to determine whether a claim sounds in medical malpractice or ordinary negligence: "(1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Bryant v. Oakpointe Villa Nursing Ctr.*, 684 N.W.2d 864, 871 (Mich. 2004). If the answers to both of these questions are "yes," then the claim sounds in medical malpractice. *Id*. With regard to the first question, the Michigan Supreme Court provided that "[a] professional relationship exists if a person or an entity capable of committing medical malpractice was subject to a contractual duty to render professional health-care services

---

[1] Plaintiff also seeks leave of court to reinstate his claims against the individual defendants on the basis that he has now exhausted his administrative remedies against them. (Docket no. 79 at 9-10.) As Defendant points out, however, it is procedurally improper to make such a request in a brief filed in response to a motion for summary judgment. (*See* docket no. 80 at 4 n. 1.) Furthermore, Plaintiff's request must be denied because all of the grievances attached to Plaintiff's Response in support of this request were submitted to the BOP grievance administrator after Plaintiff initiated this action (*see* docket no. 79-11), and it is well settled that a prisoner may not exhaust his administrative remedies during the pendency of the federal lawsuit. (*Id*. (citing *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)).)

to the plaintiff." *Kuznar v. Raksha Corp.*, 750 N.W.2d 121, 126 (Mich. 2008) (citing *Bryant, supra*). With regard to the second question, the *Bryant* court provided the following guidance:

> If the reasonableness of the health care professionals' action can be evaluated by lay jurors, on the basis of their common knowledge and experience, it is ordinary negligence. If, on the other hand, the reasonableness of the action can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue before the jury explained by experts, a medical malpractice claim is involved.

*Bryant*, 684 N.W.2d at 872.

Plaintiff argues that Defendant's action did not occur within the course of a professional relationship because former individual Defendants Pomaloy and Gidel are not licensed healthcare professionals and because the health services department at FCI-Milan is not a licensed healthcare facility under Michigan law. (Docket no. 79 at 5-6.) But under Michigan law, a healthcare professional need not be licensed to be subject to medical-malpractice liability. *See* Mich. Comp. Laws § 600.2912 ("A civil action for malpractice may be maintained against any person professing or holding himself out to be a member of a state licensed profession.") and its Committee Comment:

> Members of state licensed professions are liable for malpractice at common law, as are unlicensed persons. What [§ 600.2912 ] does is hold the unlicensed person to the standard of care to which a member of the state licensed profession would be held, instead of to the standard of care of a layman, to which unlicensed persons are held at present.

*Sam v. Balardo*, 308 N.W.2d 142, 149 (Mich. 1981). Plaintiff relies on MCL § 600.5838a, the statute that governs the accrual of medical malpractice claims, to support his argument in this regard. But the language of MCL § 600.5838a(1) is consistent with that of MCL § 600.2912:

> For purposes of this act, a claim based on the medical malpractice of a person or entity who is *or who holds himself or herself out to be* a licensed health care professional, licensed health facility or agency, or an employee or agent of a licensed health facility or agency who is engaging in or otherwise assisting in medical care and treatment . . . accrues at the time of the act or omission that is

9

>the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

MCL § 600.5838a(1) (emphasis added).

Here, it is undisputed that Defendants Pomaloy and Gidal are not licensed healthcare professionals. (*See* docket nos. 79-8 and 79-9.) As Defendant explains, Defendants Pomaloy and Gidel are foreign medical school graduates who did not complete American internships or residencies, and who, at all relevant times, were employed by the Federal Bureau of Prisons (BOP) as Mid-Level Practitioners, a position equivalent to a physician's assistant, as which they were responsible for providing primary health care to inmate patients under the supervision of former individual Defendant William Malatinsky, M.D. (Docket no. 80 at 7-8; docket nos. 80-2, 80-3, and 80-4.) Essentially, Defendants Gidel and Pomaloy are unlicensed physician's assistants subject to medical malpractice liability, who contracted with the BOP to render professional healthcare services to Plaintiff. This is sufficient to constitute a professional relationship under *Kuznar*. Indeed, it would belie logic to find that Defendants Gidel and Pomaloy were not acting in the course of a professional relationship when they were providing medical care, adequate or not, to Plaintiff in the course of their employment at FCI-Milan. *See Hodges v. Corizon,* No. 14-11837, 2015 WL 1511153, at *12 (E.D. Mich. Mar. 30, 2015) (conduct at issue clearly occurred within the course of a professional relationship, where the prisoner plaintiff alleged that the prison's healthcare professionals, including a physician's assistant, provided medical care to him).

In fact, several courts interpreting Michigan medical malpractice law have either explicitly or implicitly found that a correctional facility's healthcare department and its staff have professional relationships with the facility's inmates. *Fisher v. Cty. of Macomb*, No. 2:08-cv-13844, 2011 WL 2414413, at *15 (E.D. Mich. June 14, 2011) (citing *Hartzell v. City of*

*Warren*, No. 252458, 2005 WL 1106360, at *10 (Mich. Ct. App. May 10, 2005) (expert testimony is needed to assist the trier of fact in determining the reasonableness of the actions of prison healthcare providers) and *Valarie v. Michigan Dep't of Corr.*, No. 2:07-CV-5, 2009 WL 2232684, at *21 (W.D. Mich. July 22, 2009) (applying *Bryant* analysis for distinguishing medical malpractice and negligence claims to allegations of gross negligence by corrections officers)).  See also *Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824, 846 (W.D. Mich. 2012) (complaint sufficiently alleges that defendant's action occurred within the course of a professional relationship for purposes of medical malpractice claim by alleging that defendant was "under contract with defendant Correctional Medical Services to provide medical care to the inmates of the Michigan Department of Corrections"); *Hamer v. Cty. of Kent*, No. 1:13-cv-504, 2013 WL 8479414, at *9 (W.D. Mich. Nov. 6, 2013), *report and recommendation adopted,* No. 1:13-cv-504, 2014 WL 1276563 (W.D. Mich. Mar. 27, 2014) (where the doctor and nurse defendants were assigned to the county jail by their employer for the sole purpose of attending to the medical needs of prisoners, the plaintiff's claims arose in a professional relationship); *Smit v. Meyer*, No. 1:09 CV 213, 2010 WL 4365517, at *9 (W.D. Mich. Oct. 27, 2010), *aff'd,* 461 F. App'x 503 (6th Cir. 2012) (nurse practitioner employed by correctional facility's healthcare provider was capable of committing malpractice under Michigan law and owed plaintiff a duty to provide him with professional healthcare services; thus, plaintiff's negligence claims clearly occurred within the course of a professional relationship).  Like the actions of the defendants in the aforementioned cases, Defendant's alleged actions against Plaintiff in this matter occurred within the course of a professional relationship; thus, the first requirement in determining whether Plaintiff's claims sound in medical malpractice rather than ordinary negligence is met.

This raises the question of whether the second requirement, that the claim raises questions of medical judgment beyond the realm of common knowledge and experience, is also met. Certainly, not all matters related to medical care require expert testimony. For example, "[n]o expert testimony is necessary to show that the defendant acted negligently by failing to take any corrective action after learning of the problem." *Bryant*, 684 N.W.2d at 876. Plaintiff presents such an argument here by claiming that Defendant Pomaloy failed to provide Plaintiff with any treatment or discharge instructions related to Plaintiff's boils at Plaintiff's February 13, 2013 appointment. (Docket no. 79 at 7.) Plaintiff argues that "[i]t is clearly within common knowledge and experience that an ordinary prudent person would expect that the boils under the left armpit and groin would be treated or, at minimum, provided discharge instructions regarding the care of the same." (*Id.*) Moreover, Plaintiff argues, it is clearly within the common knowledge and experience of an ordinary prudent person that pain medication would be administered to someone like Plaintiff who was experiencing excruciating pain, but no pain medication was administered to Plaintiff in this case. (*Id.* at 7-8.)

The objective medical evidence submitted by Plaintiff in this matter does not support Plaintiff's arguments. According to Plaintiff's medical records, Plaintiff presented at the FCI-Milan Health Services Department on February 13, 2013 with complaints of body aches, chills, weakness, light-headedness, coughing, a boil in his left armpit, and something painful in his right eye. (Docket no. 79-2 at 1.) Plaintiff rated his pain level as an eight. (*Id.*) Defendant Pomaloy conducted an examination of Plaintiff and noted that Plaintiff had a 102-degree temperature, pustules located in his shoulder and suprapubic regions, and a tiny white spot near the lateral aspect of the cornea in his right eye, and that Plaintiff appeared to be in pain. (*Id.* at 1-2.) Defendant Pomaloy diagnosed Plaintiff with an acute upper respiratory infection and an eye

problem and prescribed Plaintiff with eye drops and acetaminophen for his pain and fever. (*Id.* at 2-3.) He also entered a consultation request for Plaintiff to see an optometrist regarding his eye. (*Id.* at 3.) Finally, Defendant Pomaloy recommended that Plaintiff follow up at Sick Call as needed, return immediately if his condition worsened, and return to Sick Call if his condition did not improve. (*Id.*)

As the evidence demonstrates, this is not a matter in which Plaintiff received no treatment at all for his boils. Contrarily, this is a matter that raises the question of whether Defendant's employees exercised proper medical judgment and followed the standard of care in treating Plaintiff's boils and his ensuing staph infection. Such a question is beyond the realm of common knowledge and experience of a lay juror. Stated differently, it is improbable that a layman could properly diagnose a boil or a staph infection, assess all of the known risks associated with those conditions, and determine the proper treatment of the same, including any necessary medications, without the aid of an expert witness. Accordingly, Plaintiff's claims sound in medical malpractice, and expert testimony is required to establish the appropriate standard of care governing Defendant's actions and to establish that Plaintiff's injuries were caused by Defendant's breach of that standard.

Plaintiff argues that if the court finds that this is a case of medical malpractice, he does not need to come forward with expert testimony because the same can be obtained from defense witnesses, specifically, from former individual Defendants Pomaloy, Gidel, and Malatinsky. (Docket no. 79 at 9 (citing *Beattie v. Firnschild*, 394 N.W.2d 107 (Mich. Ct. App. 1986) and *Rice v. Jaskolski*, 313 N.W.2d 893 (Mich. 1981)).) The cases cited by Plaintiff, however, were decided before the before the adoption of 1993 PA 78, Michigan's 1993 tort reform legislation, which provides that, in order to proceed on a claim of medical malpractice, a plaintiff must file a

13

valid affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness. *Walworth v. Metro. Hosp.*, No. 327795, 2016 WL 4071174, at *8 (Mich. Ct. App. July 28, 2016) (citing Mich. Comp. Laws § 600.2912d). Even if an affidavit of merit were not required in this matter, Plaintiff failed to name Defendants Pomaloy, Gidel, or Malatinsky as expert witnesses by the May 1, 2016 deadline, which is fatal to his argument in this regard. *See Beattie*, 394 N.W.2d at 111 (a defendant is entitled to some notice that he is to be called as an expert to testify against himself and establish a standard of care).

Because Plaintiff has failed to name expert witnesses in this matter, he cannot meet his burden of establishing a *prima facie* case of medical malpractice, and Defendant is therefore entitled to judgment as a matter of law. *See Matthews*, 52 F. App'x at 810 (affirming dismissal of federal prisoner's medical malpractice claim where prisoner failed to identify an expert witness). Defendant's Motion for Summary Judgment should be granted.

### D. Conclusion

For the above-stated reasons, the undersigned recommends that the court **GRANT** Defendant's Motion for Summary Judgment (docket no. 78) and dismiss this matter in its entirety.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th

Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: January 27, 2017         s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: January 27, 2017         s/ Lisa C. Bartlett
                                Case Manager

15