UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Emmett Buffman,

                Plaintiff,      Case No. 13-cv-14024

v.                                    Judith E. Levy
                                     United States District Judge

United States of America,

                                     Mag. Judge Mona K. Majzoub

                Defendant.

_____/

**OPINION AND ORDER DENYING OBJECTIONS TO REPORT AND RECOMMENDATION [82], ADOPTING IN PART REPORT AND RECOMMENDATION [81], AND GRANTING MOTION FOR SUMMARY JUDGMENT [78]**

On September 19, 2013, Emmett Buffman filed a complaint against the United States of America under the Federal Tort Claims Act, alleging federal employees gave him insufficient medical care while he was incarcerated at Milan Federal Correctional Institution ("FCI Milan"). (Dkt. 1.)[1]  On May 20, 2016, defendant filed a motion for summary judgment (Dkt. 78), and the Magistrate Judge issued a Report and

---

[1] Plaintiff also named other defendants and alleged other claims that have since been dismissed.

Recommendation ("R&R") on January 27, 2017, with a recommendation to grant the motion. (Dkt. 81.) On February 14, 2017, plaintiff filed objections to the R&R. (Dkt. 82.)

For the reasons set forth below, plaintiff's objections are denied, the R&R is adopted in part, and defendant's motion for summary judgment is granted.

## I. Background

Plaintiff's complaint arises from what he characterizes as negligent medical treatment for two boils, which allegedly led him to require emergency surgery. (Dkt. 1 at 5–6.) After seeking treatment for the two boils, he alleges former defendants Restituto Pomaloy, Stephen Gidal, and William Malatinsky—dismissed on January 6, 2015—"acted with deliberate indifference, negligence, Abuse of Process, Acts, Errors, Omission, and other tort violations which were intentional" by "failing to follow industry practice norms, as well as the BOP Program Statement regarding Patient Care." (Dkt. 1 at 6–7.) Mr. Pomaloy and Mr. Gidal were employed as Mid-Level Practitioners by the Bureau of Prisons, a role "analogous to physician's assistants," and were under the supervision of Dr. Malatinsky, a licensed physician. (*See* Dkt. 80 at 7–8.)

2

On February 13, 2013, plaintiff sought treatment for a boil and "body aches, chills, weakness, lightheadedness, and a cough." (Dkt. 82 at 8.) Mr. Pomaloy diagnosed plaintiff with an acute respiratory infection and also referred him to an optometrist for further care related to a white spot on plaintiff's eye. (*Id.*) Plaintiff alleges his boil was never treated and he was given no instructions regarding his care. (*Id.*) After being discharged, plaintiff allegedly returned to the Health Services Department at FCI Milan three times between that day and February 20, 2013, and wrote to Dr. Malatinsky to request treatment for the boils. (Dkt. 79-5.)

On February 20, 2013, plaintiff returned to the Health Services Department and was seen by Mr. Gidel, who wrote that plaintiff had been seen "1 week ago for a boil" and it had "gotten a lot worse." (Dkt. 79-4 at 1.) Mr. Gidel discharged plaintiff with an order that he be given sulfamethoxazole and acetaminophen, and that he have a "daily dressing change and wound check." (*Id.* at 2.) Plaintiff was seen again the next day by Mr. Gidel, who requested lab tests and instructions to "return immediately if condition worsens" and "follow-up in 2-4 hours." (Dkt. 79-

6 at 2.) The order also requested that Dr. Malatinsky review the lab results. (*Id.*)

On February 22, 2013, plaintiff was transferred to St. Joseph Mercy Hospital where he allegedly underwent surgery for the infectious cores at the sites of the boils, and where he convalesced until February 26, 2013. (Dkt. 1 at 20.)

Following these events, plaintiff filed this complaint *pro se*, arguing defendants United States of America, Restituto Pomaloy, Stephen Gidal, William Malatinsky, Warden J.A. Terris, and Administrator Zesto were liable under the Federal Tort Claims Act and for constitutional violations under the *Bivens* doctrine. (*See generally* Dkt. 1.) On January 6, 2015, the Court dismissed plaintiff's claims against the individual defendants without prejudice for failure to exhaust administrative remedies. (Dkt. 51.)[2]

---

[2] In the response to defendant's motion for summary judgment, plaintiff also requested that the Court permit him to reinstate the claims that were previously dismissed without prejudice for failure to exhaust his administrative remedies. (Dkt. 79 at 10.) The Magistrate Judge rejected the request in the R&R (Dkt. 81 at 8 n.1) and plaintiff has not objected to this portion. Accordingly, and having reviewed this part of the R&R, the Court adopts this finding and denies plaintiff's request to reinstate the previously dismissed claims.

On June 22, 2015, plaintiff was granted pro bono counsel. (*See* Dkt. 64.) And on February 1, 2016, plaintiff filed a witness list, which listed Edward Linker, M.D., and Daniel R. Kaul, M.D., as experts. (Dkt. 70 at 3–4.) It also stated that plaintiff "reserves the right to elicit expert/opinion testimony from any individual who provided medical treatment to Emmett Buffman during his lifetime," and from "any and all witnesses [disclosed] by Defendant." (*Id.* at 4.) Defendant's witness disclosures listed as potential witnesses Dr. William Malatinsky, Restituto Pomaloy, and Stephen Gidel. (Dkt. 71 at 1.) As an expert, defendant listed Grant M. Greenberg. (*Id.*) Following these disclosures, plaintiff's counsel then notified defendant on April 15, 2016, that plaintiff would "not be utilizing Dr. Edward Linkner or Dr. Daniel Kaul as experts" in the case. (Dkt. 78-4 at 1.)

A more detailed account of the facts and background of this case are included in the R&R (Dkt. 81) and are incorporated by reference and adopted here. In the R&R, the Magistrate Judge found plaintiff's claim was properly considered as a medical malpractice claim rather than, as plaintiff argued, an ordinary negligence claim, and because plaintiff did not name any expert witnesses who could establish the appropriate

5

standard of care relevant to plaintiff's medical needs, as a matter of law, plaintiff could not sustain the medical malpractice claim. (Dkt. 81 at 13–14.)

## II. Legal Standard

A magistrate judge's report and recommendation is made pursuant to 28 U.S.C. § 636(b)(1). "[T]his recommendation has no presumptive weight," and the district judge "has the responsibility of making the final determination." *Patrick Collins, Inc. v. John Does 1-21*, 286 F.R.D. 319, 320 (E.D. Mich. 2012). If a party objects to part or all of the R&R, the district judge must review de novo those parts to which the party has objected. *Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002); Fed. R. Civ. P. 72(b)(3). De novo review "entails at least a review of the evidence that faced the Magistrate Judge." *Lardie*, 221 F. Supp. 2d at 807. After reviewing an R&R, a court may "accept, reject, or modify the findings or recommendations." *Id*.

## III. Analysis

Plaintiff objects to the R&R on three grounds, and also argues excusable neglect exists to justify the late filing of the objections. (Dkt. 82 at 7.)

### *Untimely Objections to R&R*

The R&R was issued on January 27, 2017, and informed the parties they had to submit any objections within fourteen days of service, as required by Fed. R. Civ. P. 72. (Dkt. 81 at 14.) Assuming plaintiff's counsel was given electronic notice of the R&R the same day it was issued, the deadline for objections to be submitted was February 10, 2017. Plaintiff's counsel mailed a copy of the R&R to him in Lisbon, Ohio, where plaintiff is currently incarcerated. On February 13, 2017, plaintiff mailed counsel a letter requesting that he file objections. The objections were filed on February 14, 2017.

Objections that are filed late may be considered by a court if "the failure to timely file objections was not the result of culpable conduct but of 'excusable neglect.'" *Williams v. Meyer*, 346 F.3d 607, 613 (6th Cir. 2003). "A party's conduct is culpable if it 'display[s] either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings.'" *Id.* (quoting *Amernational Indus. v. Action-Tungsram, Inc.*, 925 F.3d 970, 978 (6th Cir. 1991)).

Here, plaintiff was mailed a copy of the R&R soon after it was issued. Because of the time it took for plaintiff to receive and review it,

7

and then mail a letter to his attorneys to request they file objections, the four day delay in filing objections does not evidence culpable conduct. It demonstrates an intent to comply with the filing rules rather than thwart or disregard them. Accordingly, plaintiff has established excusable neglect to justify the late filing of objections, and the Court will consider them on the merits. *Compare Williams*, 346 F.3d at 613–14 (excusable neglect where counsel sought extension of filing deadline in a timely manner and then filed objections soon after motion was denied) *and Chandler v. Jackson*, 132 F.3d 32, at *1 (6th Cir. 1997) (table) (no excusable neglect where no objections or motion to extend time was filed for more than one month after deadline expired).

### *Objection 1: Characterization of the Claim*

Plaintiff argues the Magistrate Judge erred in finding his claim was properly considered a medical malpractice claim instead of an ordinary negligence claim because an ordinary person would know that the failure to provide any treatment for his boils was negligent. (Dkt. 82 at 11–13.)

Under Michigan law, a medical malpractice claim may be brought against "a licensed health care professional, licensed health care facility or agency, or an employee or agent of a licensed health facility or agency

8

who is engaging in or otherwise assisting in medical care and treatment."[3] MICH. COMP. LAWS § 600.5838a. A claim sounds in medical malpractice rather than ordinary negligence only if the following two questions are answered in the affirmative: "(1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Bryant v. Oakpointe Villa Nursing Centre, Inc.*, 471 Mich. 411, 422 (2004).

"A professional relationship sufficient to support a claim of medical malpractice exists in those cases in which a licensed health care professional, licensed health care facility, or the agents or employees of a licensed health care facility, were subject to a contractual duty that required that professional, that facility, or the agents or employees of that facility, to render professional health care services to the plaintiff." *Bryant*, 471 Mich. at 422. Plaintiff does object to the R&R's finding that the events at issue "occurred within the course of a professional

---

[3] Under the Federal Tort Claims Act, the substance of a medical malpractice claim is governed by the relevant state law, which, in this case, is Michigan. *Shedden v. United States*, 101 F. App'x 114, 115–16 (6th Cir. 2004) (citations omitted).

relationship." And, as set forth in greater detail in the R&R, Mr. Pomaloy and Mr. Gidel were employees of the Bureau of Prisons, and supervised by Dr. Malatinsky, specifically to provide health services to inmates. Thus, the requisite professional relationship existed between plaintiff and the medical personnel to satisfy the first prong of the test for whether the claim is indeed for medical malpractice.

Plaintiff objects to the finding that the actions he challenges "raise[] questions of medical judgment beyond the realm of common knowledge and experience." Here, plaintiff argues he received no treatment for two boils, and his three requests to Dr. Malatinsky for treatment between February 13, and 20, 2013 were ignored, and "[i]t is well within common knowledge and experience that an ordinary prudent person would expect to be evaluated and receive treatment." (Dkt. 82 at 12.)

To assess whether this case should be viewed as an ordinary negligence or medical malpractice case, the Court is not bound by the "party's choice of label" because that would "exalt form over substance" and allow a party to "avoid the dismissal of a cause of action through artful pleading." *Norris v. Lincoln Park Police Officers*, 292 Mich. App.

10

574, 582 (2011). Instead, the Court must determine the "gravamen of [] plaintiff's action . . . by examining the entire claim." *Id.*

Here, plaintiff was examined on February 13, 2013 by Mr. Pomaloy, who evaluated plaintiff's complaints of a number of symptoms, including a boil, allegedly misdiagnosed plaintiff with an acute respiratory infection, and failed to treat the boil. Plaintiff then complained in writing to Dr. Malatinsky, but did not return for treatment until February 20, 2013, despite being instructed to return if his condition worsened. On February 20, 2013, Mr. Gidel prescribed medication, ordered lab tests, and instructed plaintiff to return daily for care. And because of these individuals' actions, plaintiff allegedly suffered severe injuries that were caused by their actions.

The "gravamen of [] plaintiff's action," therefore, goes to whether these individuals appropriately diagnosed, treated, and instructed plaintiff on his medical needs. In other words, the question is whether these individuals exercised appropriate medical judgment. And as the standard indicates, when "medical judgment" is at issue, a plaintiff's claim is one for medical malpractice. In this case, because the crux of plaintiff's claim, from his initial appointment with Mr. Pomaloy on

11

February 13, 2013, to his final appointment with Mr. Gidel on February 22, 2013, is whether these individuals failed to treat or properly diagnose him, plaintiff's claim sounds in medical malpractice, not ordinary negligence. *See David v. Sternberg*, 272 Mich. App. 377, 383–84 (2006) (failure to respond to complaints of pain and fever sound in medical malpractice not ordinary negligence). Accordingly, plaintiff's objection to the finding that his claim is for medical malpractice is denied, and the R&R as to this issue is adopted.

### *Objection 2: Identification of Experts*

Plaintiff objects to the proposed finding that he did not properly identify expert witnesses to establish the appropriate standard of care. (Dkt. 82 at 14.) Plaintiff argues that (1) defendant conceded the appropriate standard of care through the affidavit of Dr. Grant Greenberg (Dkt. 43-15), and (2) plaintiff's amended witness list sufficiently identified Mr. Pomaloy, Mr. Gidel, and Dr. Malatinsky as experts. (Dkt. 82 at 14.)

In a medical malpractice claim, a plaintiff must establish "(1) the applicable standard of care, (2) breach of that standard of care by the defendant, (3) injury, and (4) proximate causation between the alleged

12

breach and the injury." *Elher v. Misra*, 499 Mich. 11, 21 (2016). "Generally, expert testimony is required in a malpractice case to establish the applicable standard of care and to demonstrate that the professional breached that standard." *Id.*

Plaintiff first argues he may rely on the affidavit of Dr. Grant to establish the appropriate standard of care under Michigan's adverse party statute, MICH. COMP. LAWS § 600.2161, which permits a party to call as its own witness "the opposite party [or] an employee or agent of the opposite party." Dr. Grant is neither a defendant nor an employee or agent of defendant, and therefore could not be called in plaintiff's case-in-chief under Michigan's adverse party statute. Accordingly, plaintiff cannot rely on Dr. Grant's affidavit to establish a *prima facie* case of medical malpractice.

Plaintiff next argues he properly identified and disclosed Mr. Pomaloy, Mr. Gidel, and Dr. Malatinsky as expert witnesses, and may rely on their testimony to establish the appropriate standard of care. Plaintiff's witness list stated he "reserves the right to elicit expert/opinion testimony from any individual who provided medical treatment to Emmett Buffman during his lifetime." (Dkt. 70 at 4.) But plaintiff did

13

not specifically name Mr. Pomaloy, Mr. Gidel, or Dr. Malatinsky as expert witnesses, and defendant also did not list them as experts.

Even assuming plaintiff's witness list gave defendants sufficient notice that these three individuals may be called as experts, plaintiff has still failed to provide the required disclosures under Fed. R. Civ. P. 26(a) that would permit their testimony to be admitted at trial. When treating physicians are called as experts, they "usually do not trigger" the requirement to submit an expert report. *Phillips v. UAW Int'l*, Case No. 15-cv-10525, 2015 WL 6156968, at *1 (E.D. Mich. Oct. 19, 2015). This rule applies as long as the testimony and "opinions [are] formed as a part of the patient's treatment and diagnosis." *Avendt v. Covidien Inc.*, 314 F.R.D. 547, 556 (E.D. Mich. 2016) (quoting Rule 26 Advisory Committee Notes, 2010 Amendment, Subdivision (a)(2)(C)). In lieu of expert reports, however, the disclosure must be accompanied by "(i) the subject matter on which the witness is expected to present evidence . . .; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). But if the testimony goes "beyond the scope of treatment and diagnosis" of the patient treated by the witness, then an expert report is required. *Avendt*, 314 F.R.D. at 556

14

(quoting Rule 26 Advisory Committee Notes, 2010 Amendment, Subdivision (a)(2)(C)).

In this case, plaintiff argues he identified all treating physicians as potential expert witnesses. However, he did not identify either the subject matter of the testimony or provide a summary of the facts and opinions to which they would be expected to testify. Thus, these proposed experts were not properly disclosed pursuant to Fed. R. Civ. P. 26.

Further, to the extent that they would, as plaintiff indicates, testify about the appropriate standard of care, they would no longer be testifying in their capacities as treating physicians, because the standard of care is not a fact or opinion learned from or informed by the treatment or diagnosis of plaintiff. Rather, it is testimony that would be given by a witness "retained or specially employed to provide expert testimony." Fed. R. Civ. P. 26(a)(2)(B). Thus, plaintiff is required to identify specifically which treating physicians he intended to call as experts with regard to the standard of care and submit expert reports. Plaintiff has not done so. Thus, these three individuals would not be permitted to give expert testimony to establish the appropriate standard of care. *See Tanner v. Grand River Navigation Co., Inc.*, Case No. 14-cv-13478, 2015

15

WL 8310291, at *2 (E.D. Mich. Dec. 9, 2015) (citing *Dickenson v. Cardiax and Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004)).

Because none of the above witnesses have been sufficiently identified as experts who are qualified to establish the appropriate standard of care during plaintiff's case-in-chief, plaintiff has not demonstrated he has an expert whose testimony would establish a *prima facie* case of medical malpractice. Thus, as a matter of law, plaintiff's claim cannot survive, and defendant is entitled to summary judgment. Accordingly, plaintiff's objection to the finding that he did not properly identify expert witnesses is denied. However, because the Court has reached this conclusion on grounds different from the Magistrate Judge, this part of the R&R is not adopted.[4]

### *Objection 3: Leave to Modify Scheduling Order*

Plaintiff seeks to modify the scheduling order (Dkt. 66) that was entered August 14, 2015, to add Mr. Pomaloy, Mr. Gidel, and Dr. Malatinsky as experts for plaintiff pursuant to Fed. R. Civ. P. 16(b)(4). (Dkt. 82 at 15.) Although plaintiff argues for a scheduling order

---

[4] The R&R concluded plaintiff had failed to identify expert witnesses because (1) the cases relied on predated the 1993 amendment to the medical malpractice statute, and (2) the individuals were not given notice that they may be called as experts to testify against themselves. (Dkt. 81 at 13–14.)

modification, what plaintiff seeks is to disclose these three individuals as experts after the disclosure deadline, which is governed by Fed. R. Civ. P. 37(c), not Rule 16.

Fed. R. Civ. P. 37(c) states that a party that "fails to . . . identify a witness as required by Rule 26(a) . . . is not allowed to use that . . . witness . . . unless the failure was substantially justified or is harmless." "A harmless violation is one that involves an honest mistake, combined with sufficient knowledge by the adversary." *Tanner*, 2015 WL 8310291, at *2 (citing *Roberts ex rel. Johnson v. Galen of Va.*, 325 F.3d 776, 783 (6th Cir. 2003)).

In this case, plaintiff's deadline to name and disclose expert witnesses was May 1, 2016. (Dkt. 75.) Here, plaintiff has offered no reason why he failed to comply in a timely fashion with the expert witness identification requirements of Fed. R. Civ. P. 26(a)(2)(B) or (C). And when plaintiff decided in April 2016 not to use Dr. Edward Linkner or Dr. Daniel Kaul as experts, plaintiff had two weeks to either amend the witness list or ask for an extension. Plaintiff did not do so, and has offered no reason for why an extension was not sought. Thus, plaintiff has failed to establish that the failure to disclose was either substantially

17

justified or a harmless violation. Accordingly, the Court denies the request to add expert witnesses.

## IV. Conclusion

For the reasons set forth above, plaintiff's objections (Dkt. 82) are DENIED. The Report and Recommendation (Dkt. 81) is ADOPTED IN PART as to all issues except whether plaintiff sufficiently identified an expert witness, and defendant's motion for summary judgment (Dkt. 78) is GRANTED.

IT IS SO ORDERED.

Dated: April 4, 2017　　　　　　　　s/Judith E. Levy
Ann Arbor, Michigan　　　　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 4, 2017.

　　　　　　　　　　　　　　　　　s/Shawna C. Burns
　　　　　　　　　　　　　　　　　SHAWNA C. BURNS
　　　　　　　　　　　　　　　　　Case Manager Generalist